My name is Andrew Butler-Jones. I represent the appellant, Sammy Mitri. I'd like to reserve four minutes or so for rebuttal. Yeah, manage your own time. Because I think it's important for the court to be cognizant of how it affects testimony, I'm going to digress to a point superficially made in my appeals brief. And that is, I feel some court should recognize that the law in relation to managing agents is fragmented, that there is no unified theory of corporate liability. Instead, we have game theory. We have game theory because corporations are using differences in the law to tailor the testimony dependent upon the cause of action they're facing, by example. Class actions require common policy made across the corporate bounds. So in those cases, corporations have testimony that independent store managers are opposed with discretion and independent authority to make policy at a store level. May I ask, this is really a state law issue, correct? Yes. And so I appreciate your argument. I think the cases, you line them up, and you say some say yes, some say no, depending on the circumstances. But it would seem to me our role as Federal Court is we have to best determine whether the contour is the California law, but we're not going to rewrite or change California law. So in light of that, how does that affect your appeal? I'm just talking about the fact that a manager who wants overtime, company comes in and says he's given a salary and exempt because he has discretion. I'm talking about in a case where that same manager is sued for wrongful termination, as in this case, or discrimination, that company will come in and say policy is made only at the highest level of this corporation, only by the officers and directors in home office. And that's what's happening. So what difference does that make in this case? I mean, the fact that there's differing standards, or they may have different testimony, different case, I'm not sure where you're headed. I'm headed into the facts of this case. You don't have to focus on exactly what standards apply to this case under state law and how they apply. So why don't you go there? I am. And I'm talking about the tailoring of testimony, in this case, by Robert Hastie. Your Honors, 3294, punitive damages from Egan, decided 1979, statutorily created the standard in 1980. The test here is whether we can really say one of the top 40 managers of Walgreens, who manages 153 stores out of 8,000 stores, each store with 15 to 20 employees, 3,000 to 5,000 employees, whether that man is a managing agent. And while it's true that he doesn't set policy for 100% of the company, he sets policy for 100% of the employees he manages in California. The question is whether that man manages an insignificant part of Walgreens' business. It's a $72 billion business by the financial news today. Makes a $13 billion profit. He manages about a 3% share of that. He manages $600 million in profit, $2 billion in gross. His testimony is that he mentors the people under him. Mentors is another name for directs. His testimony is that he manages the profits of the corporation. In Egan, the agent testified that he did not have the authority to make ad hoc formulation of policy. In Egan, the court decided he was a managing agent. When amended in 1980, they amended it to state that with respect to corporate employers, conscious disregard, ratification, authorization, approval of a managing agent was sufficient. Only subsection A was subjected to the clear and convincing standard. Now, this particular manager, though, he did not hire any of the pharmacists. He did not control, when you say policy, he didn't control the policy of the defendants as far as the types of individuals that would be hired. He was in on interviews, right? He participated in going to the particular stores within his region. But it doesn't say that he ever reported back to any higher authorities, such as the Human Resources Department, and enforced a kind of human resources company-wide authority policy, right? That would be giving the defense the inferences reasonable from its testimony. We proved, to the contrary, with clear and convincing evidence through a jury, that he was a managing agent. That if you infer from his position attached to his testimony about mentoring, about controlling the discipline, about managing the employees, about giving performance evaluations, about telling Mr. Mitri what his disciplinary final write-up was, and if you control, if you talk about a vice president, marketing vice president, somebody that is ostensibly given an authority of an officer of the company to manage this amount of business, can we really say somebody at that highest level of a corporation that has 240,000 employees, and this man is in the top 40, can we really say he is not a managing agent of the company? Let me turn it to a second point, and let's assume that you're right on the managing agent point, which has been the focus of the California cases. I'm interested in that second prong that needs to be addressed, which is the malicious, oppressive, or fraudulent. With respect to Mr. Hastie, how does that prong play out? 3294 was written to include clear and convincing in the first prong subsection A. If they wanted clear and convincing to apply to both prongs, they would have put it in the preface. In addition, Willie Brown and Bill Locklear are the people who modified the law in 1987 with the Civil Liability Reform Act of 1987. They were not going to impose clear and convincing on the proof of managing agency. They were only establishing that negligent acts are insufficient to support punitives. And in doing so, they said, we are in subsection A going to establish scienter, a malicious intent to do the harm. And in that section, we will require the plaintiff to prove with clear and convincing evidence that there was malice, oppression, or fraud. And they defined it, malice being conscious disregard of the employee's rights. That was proven in this case. To the second section, where we talk about subsection B, there is no requirement of clear and convincing evidence. And the question I have is, if you're gonna establish that the presumption of preponderance of evidence is in some way changed by subsection B, where do we draw the line? If punitive damages are going to be awarded, where do you draw the line? Does that mean? Can I just? I just want to clarify something. I want to make sure I understand this, because then I'm not looking at the wrong statute. I'm looking, I think, at 3294, and it says, we're in an action not arising from a contract, where it's proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. Is that not the statute I'm supposed to be looking at? That's the first subsection of the statute, but the subsection that applies to managing agency is subsection B, and it is not subject to clear and convincing evidence standards or burden of proof. And that's the issue here. Egan wasn't subject to clear and convincing standard. White versus Ultramar wasn't. And although Barden is talked about as establishing that at the appellate level, we follow that by the Roby decision by the California Supreme Court, which says weak evidence is sufficient to establish managing agency. And that weak evidence is certainly not clear and convincing standard. It's a preponderance. Well, under the section B, it says an employer doesn't get stuck under A unless. He's a managing agent, officer, director. Yes, but it doesn't say, and you must prove that by clear and convincing proof. But I will say this. We won the case on clear and convincing proof. I understand. That's what the jury was instructed. Yeah. And so we're entitled to all the evidence in the light most favorable to our client. We're entitled to all reasonable inferences. We're entitled to ignore the defense arguments. We're entitled to ignore their direct testimony, which I say is wordsmithed to evade liability under this area of law and would have been exactly the opposite if they'd been sued for class action. That's what I'm saying, is the jury can take their look at this man. The judge can take their look at this man. And the judge did. And he said, I found their demeanor on the stand was not credible. That's in the footnote. And he says, I find that Hastie can be disbelieved. Why? Because of the timing of the termination after the report of fraud, because of the failure to observe progressive disciplinary programs, because of a variety of things itemized by the court. Read the court's order. The court, in support of liability against this company, gives us all the evidence in the light most favorable to our client and says, yeah, there's liability. And you can't read that and give us all the inferences and then flip and say, but Mr. Hastie testified he had no discretion. Yeah, that was self-serving. Yeah, that was exculpating. But you don't have to give him that testimony. You don't have the right to make that inference that it's truthful. We instead have proven he was not a truthful man. He testified he did not know of the complaint of fraud on December 26 when he authorized and participated in the termination of this employee eight days later. And his subordinate said he did know. And the jury accepted that, that he was a liar. And so why are we relying on his testimony, which is self-serving and exculpating, to say, we're going to give the defense that testimony in the light most favorable to the defense and take all reasonable inferences to the advantage of the defense and ignore all reasonable inferences from the plaintiff's proof granted by the jury in the light most favorable to the plaintiff. And we're going to give the defense an out and let them escape liability for a conscious disregard of Mr. Mitri's rights that led to a man who was earning $230,000 a year to a job that is now $150,000, who had a man who had zero motive, personal motive, to put his job on the line to protect the public from a admitted Medicare fraud. And an admitted- You're down to less than three minutes if you want to reserve. I didn't want to interrupt your argument, but I did want you to lose your rebuttal time. I best wait and see what happens, Your Honor. I'm sorry. I had a lot more to say. Morning, Your Honors. May it please the Court. My name is Rex Berry. I'm representing the Appalachee Walgreen Co. in this matter. Mr. Jones said something that I think is very important. He asked the panel to read the Court's order and let me join in that request, because what you have before you from Judge Ishii, a well-respected, very bright jurist, is a 21-page order in which he painstakingly crawls through the record to determine what the record shows, and importantly with regard to the punitive damages issue, what the record does not show. With regard to the some of the statements, for example, about, for example, Mr. Hastie setting policies for 100 percent of the employees in California, you'll search the record in vain for anything like that. What the record has in this case with regard to Mr. Hastie's testimony is the plaintiff read into the record the entire deposition of Mr. Hastie. The plaintiff then had the opportunity to cross-examine Mr. Hastie. And the record evidence that came up is fairly specific. Mr. Hastie is a market VP, but he's one of 29 market VPs in the Walgreens Corporation. His operational authority that he testified to, which was only operational authority, and was only for 3 percent of the Walgreens stores that were in his geographic district. He testified in his deposition that he participated in discussions about the termination and ultimately concurred with the termination decision that was made by a subordinate. At trial, the testimony he gave was undisputed, and again, subject to cross-examination by very able counsel, that he had no authority to establish any policies even within his own market. What he testified to is that policies are established at the corporate headquarters, and I have an obligation to enforce those policies within my market. That was his testimony. He never suggested that he had the discretion to substitute something he wanted to do separate and apart and different within his own market. No such testimony ever was given. Again, he described his own authority as operational, without contradiction, and on Judge Ishii's Rule 50B order, he noted that. He said, in fact, as you pointed out, Judge Kendall, that Mr. Hastie couldn't even hire his own subordinates within his own market, and that was an inditia that was contrary to corporate authority. He noted that Mr. Hastie's description of his own duties was operational in nature and not policy-oriented, and noted that he testified, without contradiction, that he followed policies. He did not establish them. Is there anything in the divergent case law coming out of the state court that focuses on the type of policy that we're dealing with, particular to this case, for example, the policy of him working over time too many hours, which is an odd thing, that he worked too many hours and got in trouble for being too hard of a worker? But is there anything about that kind of policy that the cases pull out and say, if he had a role in making that area of policy for Walgreens, it would matter? And, in fact, there is. And on the too-hard-a-worker point, the stores have operational budgets that they have to adhere to. So if you're going to ignore those budgets and continue working, that's going to create an operational problem for the store. But let me also challenge Your Honor's use of the word divergent authority, because I don't think the authority is divergent. You have from Section 3294 the clear language of what is an appropriate standard under 3294A. If the legislature wanted some different standard in Section B, it would have presumably put it in there. You don't read into a statute some separate burden of proof that's not articulated by the legislature. I think the appropriate analysis is, as Judge McEwen says, Section A is the predicate. Section B has to be read in light of Section A. As to the types of policies, two cases were very important, White v. Ultramar, that established the issue of the standard of, the managing agent has to be someone who makes decisions, has substantial authority, discretionary authority, to make decisions that establish policies. In Roe v. McKesson, the court went a step further and said, OK, what kind of policies are we talking about? And we're talking about policies that impact the corporation on a corporate-wide basis and that are likely to come to the attention of the highest levels of the corporation. But that really is a stray language in the California cases. I mean, when we think of policy without reading the California cases, I would totally agree with you. But then I read the California cases, and to be honest, they got people being managers, managing agents. Right. From Nolan to all you're basically doing is you have responsibility for implementing policy, and so it flows down. And then you read through 10 more cases, and you got everything from a zone manager to a whatever being a managing agent. So one of the questions I have is, given this pretty broad range of California cases, and given that this went to the jury on a clear and convincing evidence standard, it would seem to take a lot for us to tip that jury verdict. And what is your best argument for why we should do that? I think the answer to your concern about the cases going every direction is a microcosm of this case. The cases have to be based on the trial record in front of them. Right. But how do you distinguish this case from White, for example? I mean, I don't see much difference, honestly. The way I distinguish this case is there was evidence in the record in White that suggested that the person at issue on the managing agent question was, in fact, establishing policies, whether it was on an ad hoc basis or whether it was directive. He was the person establishing policies for his subordinates. The record in this case is exactly the opposite. There is a hole in the record in this case where you might expect to find testimony about Mr. Hastie's decisions impacting subordinate employees. It's not in the record. You have Mr. Hastie's testimony that he doesn't do those things, and you have no contradiction to that. The reason the cases, I think, are all over the map, if you look, for example, at the Guelfo case that's cited in our brief, there, the person at issue found not to be a managing agent was a vice president. But we know that that doesn't matter because the title doesn't matter. In the Munez case, I think it was Munez versus Motorola, the person at issue was not a managing agent, even though that person had authority over 4,000 subordinate employees. So what you have to conclude from those trial records is there either was or was not sufficient evidence of the ability to make decisions that establish policy. Mr. Hastie was questioned about his job duties. He testified that they were operational in nature, and that's where the road ended. So I don't want to leave behind one particular issue, and that is if we're now assuming that clear and convincing is the appropriate standard, I agree with that, especially in light of the fact that that's what the statute says, that's what the jury instructions under CACI say, that's what Barton says. And by the way, Barton is not dicta. And also the new case that we've heard of. There was not a challenge here to the jury instruction on that, correct? There was not a challenge to the jury instruction. And that goes into the waiver argument, that the clear and convincing standard was accepted by appellant in his response to our Rule 50A motion, in response to arguing the jury instructions, and in his own arguments on closing to the jury. The clear and convincing issue didn't come up until the opening brief, and that's too late in this context. Moving quickly to, if I can, and unless the Court has some other specific question, and I'm happy to address it, with regard to the Rule 59 motion on the $0 emotional distress damage award. Again, it's our position that that has been waived in light of the Philippine National Oil case and Zhang, which I know Your Honor was on, as well as the subsequent Cody case, because in appellant's own brief, his argument is a $0 emotional distress award is internally inconsistent with the verdict. Under both Zhang and Cody, if the argument is internal inconsistency, it has to be raised before the jury is dismissed. And that's for an appropriate reason, to give the trial judge an opportunity to correct any issue with the jury. Again, our position is that's been waived here. The law and the jury instructions all permit a $0 damage award for emotional distress damages. The law says damages if any. The jury instructions follow that language. You may award damages if any. So that contemplates that there may be no damages. And on the record in this case, again, Judge Ishii did a very thorough analysis of the record that was there. What he found was the only evidence of emotional distress damages was Mr. Mitri's own uncooperated testimony. There were some questions that were asked of a former co-worker, Annie Estefanian. And what she said is she saw Mr. Mitri one day. She wasn't sure when. He looked down. She asked him what the problem was. He didn't really respond. There was no testimony from a spouse, no testimony from a friend, no testimony from an MD, no medical records of any kind of psychiatric or psychological care that would arguably have supported an emotional distress damages award. The jury looked at it. Judge Ishii, in his opinion, and on the Rule 59 motion, he can, in fact, weigh credibility. And he did so. He was skeptical. That was the word he used. He was skeptical of Mr. Mitri's testimony. And he believed the jury also could be skeptical of Mr. Mitri's testimony. So he concluded that on that portion of the decision, the jury got it right, which was there was no – there was substantial evidence that could support a zero-dollar finding. And with that, unless the panel has additional questions, I can conclude. I do have a question on the second prong of this managing agent test, which I had also directed to your colleague. And that's about malicious, oppressive, and fraudulent. So even if he were deemed to be a managing agent under the various cases, what is the – what is your understanding of the conduct that was targeted to fall within those words? Well, first, the conduct that would have to be shown is way more than we have here. Under both the Escriva case and Scott v. Phoenix Schools cited in our brief, the cases are uniform that even a wrongful discharge, even if it's wrongful, does not establish oppression, malice, or fraud. There has to be something more. So in this case, the testimony and the record show Mr. Hastie was not making any decision with regard to firing Mr. Mitri. That – their evidence was that the decision was made by a district manager – excuse me, a pharmacy manager named Mr. Scalziti. The evidence was there were discussions about the decision, and Mr. Hastie was a part of those discussions, and he concurred in the decision. That evidence also showed that during those discussions, the parties specifically discussed the fact that Mr. Mitri had raised complaints of pharmacy fraud. And was there anything about the fact he had done that that made it inappropriate to fire him? That is, was he somehow now shielded from normal disciplinary action because he had raised these complaints? And the conclusion was no, that you've got – you have a violation. You've got to act on the violation regardless of whether someone has made the complaint. So there is no – there is evidence that Mr. Hastie concurred in a decision to terminate. I don't believe that reaches the level of ratification, which is what the statute requires. Ratification implies some sort of authoritative acceptance of the decision. Otherwise, it would simply just say, agree. To ratify – to ratify a contract, there's a higher standard. To ratify a decision, there would need to be some sort of authoritative component to his agreement, not simply him saying, I concur in the decision. So that's the record evidence that was presented on the issue of what Mr. Hastie did. I submit to the Court that it is far below the standard of any of the cases that have found oppression, fraud, or malice. And Judge Ishii didn't reach that issue, did he? He did not reach that issue. Once he concluded that the managing agent bar had not been met, that was the end of his analysis. Any further questions? No. Thank you for coming. Thanks. We have 2 minutes and 30 seconds. Yes, Your Honor. Okay. So I think we established the evidence that Hastie was more than just an agent or an ordinary employee. I have to ask, was his direction of the corporate acts equated to the participation of the corporation? Was he high enough level? And while that may not be the sine qua non, it is a factor to be considered in combination with the others. Did he exercise independent authority given him by the corporation? Was he responsible for just a part of a store? Or was he given authority by the corporation over all operations and the company's business? Was his errant conduct negligent or intentional? Did he participate in those acts? Yes, yes, yes, yes. And so what we're doing here is trying to retry the case with the defendant's version of what the facts are. We prove to the contrary. The defendant wants us to re-examine every element under the standard of clear and convincing. Only one element was ever required to be examined under that. And we proved that, and it wasn't appealed here. Malice, malice, oppression, fraud was not appealed. That was proven and accepted. Emotional distress. We asked the court to instruct the jury. The court declined. That's when I said that I was flabbergasted or flummoxed, and the judge declined. The defendant admitted there was damage of an emotional upset. The jury found zero. I'm just --" But the malice and oppression was not judged against the defendant? No. No. The judge found malice, oppression, and fraud proven by clear and convincing evidence. The only thing the judge found was that that act wasn't by a managing agent. And the managing agency is in subsection B of 3294, and subsection B is not subject to clear and convincing evidentiary standards. Davis, you asked the court to instruct the jury. Well, that's not how the jury instruction reads. No. The jury instruction reads otherwise. You must prove the following by clear and convincing evidence. And then it has one, two, three, each of which relates to managing agent approving or authorizing or committing. So the way the jury instruction read is clear and convincing throughout. And we briefed that at length as to why that is not controlling. The last thing I'll say is that Davis ---- You didn't object to that at the time. We proved clear and convincing managing agency. The difficulty is trying to sort out the record on appeal, because the time to object to the jury instruction is at the time it's given and not on appeal. Well, we briefed that. This is a de novo review. The judge, after all, had the right to consider the motion before the jury got there, and he looked at all the evidence that's been described here, and he did not agree at that point it was a matter of law that he could find no managing agency. He only waited until after the jury's decision to make that decision. And I will refer the court to the Davis case versus Kiewit that was the additional citation that we presented, which was certified for publication on October 8th. And I sent the court a letter on that. That establishes that somebody in Mr. Hastie's position can guide the company, can set corporate policy through negative conduct, through a choosing of not to investigate fraud, through choosing to terminate a whistleblower who was described by most of his managers as the best pharmacist they had ever seen. And they fired that guy eight days after he identified fraud for coming in 10 minutes too early to set up and leaving 15 minutes too late on 20 occasions to take care of their customer's business instead of leaving him at the window when it was time to give up his shift. Thank you, counsel. The case is heard. We'll be submitted for decision. Thank you both for your arguments.
judges: Kendall, Thomas, McKeown